**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF PROPERTY LOCATED AT 200 PENNSYLVANIA AVENUE, CLAYMONT, DELAWARE, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON, Defendant.**

**Civ. A. No. 91–76–JLL.**

United States District Court,
D. Delaware.

Feb. 25, 1992.

---

**402**

William C. Carpenter, Jr., U.S. Atty., and Carolyn T. Greene, Asst. U.S. Atty., Wilmington, Del., for plaintiff.

Mary Boudart, of Doroshow & Pasquale, Wilmington, Del., for claimant, Steven Frey.

Robert T. Aulgur, Jr., for the Delaware State Housing Authority, Odessa, Del.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

■ The United States of America filed a complaint for forfeiture *in rem* under § 881(a)(7)[1] against the defendant, one parcel of property located at 200 Pennsylvania Avenue.[2] (Docket Item ["D.I."] 1.) Before this Court is the United States' motion for summary judgment on the grounds that probable cause exists under the forfeiture laws and that the claimant, owner of the defendant property, is collaterally estopped from contesting the probable cause. (D.I. 17, 18.)

The claimant owns the defendant property and challenges its forfeiture. (D.I. 1 ¶¶ 3, 4; 8 ¶¶ 3, 4; 19.) The claimant does not challenge the constitutionality or validity of the forfeiture provisions. He does not claim that distribution of cocaine is permitted by Title 21 or that it is punishable for less than a year. He admitted to the unlawful distribution of cocaine in state court and he does not claim that the guilty plea was erroneous or involuntarily made. Rather, the claimant maintains that the Government has not shown a substantial connection between the defendant residence and the criminal activity and, thus, has not shown probable cause to justify the forfeiture of his residence. (D.I. 8 ¶¶ 6, 7.) In other words, the claimant maintains that "probable cause" requires a substantial connection between the property and the criminal activity.

## I. FACTUAL BACKGROUND

The New Castle Police Department initiated an investigation based upon information that a white male called "Bly" was dealing drugs out of the defendant residence and a citizen complaint of heavy vehicle and pedestrian traffic in and out of the defendant residence. (D.I. 1, Swift Affidavit ¶¶ 1, 2.) On May 10, 1990 an undercover officer went to the defendant residence, asked the white man called "Bly"[3]

---

1. The applicable forfeiture provision in the present action provides that:

   (a) The following *shall* be subject to forfeiture to the United States and no property right shall exist in them:
   
   (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, *in any manner or part*, to commit, or to facilitate the commission of, *a violation* of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7) (Supp.1991) (emphasis added).

2. Claymont, Delaware, with all appurtenances and improvements thereon as more particularly described in the recorded deed. (The recorded deed is attached to D.I. 1.) Civil forfeiture, a legal fiction that the seized property itself is guilty of wrongdoing, is not contingent upon the criminal conviction of the owner but rather upon probable cause that the wrongdoing occurred there. *United States v. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 624 (3d Cir.1989) [hereinafter *6109 Grubb Road I*]; *United States v. One Rural Lot,* 739 F.Supp. 74, 77 (D.Puerto Rico 1990).

3. Steven Frey had the nickname "Captain Bligh" when he was a teenager but he denies that the nickname has been *regularly used* over the last

who answered the door for a half gram coke, and gave Bly $50.00 in U.S. currency for the drugs. (D.I. 1, Swift Affidavit ¶¶ 4–6; 18 ¶ 6; 19 Ex. A at T–30.) The officer waited in the living room of the defendant residence for between 30 and 45 minutes while Bly left to obtain the order. (D.I. 1, Swift Affidavit ¶¶ 6, 7; 19 Ex. A at T–31, T–32.) Upon Bly's return, the officer accompanied Bly to a bedroom in the defendant residence where Bly poured some of a white powder substance into a clear plastic bag. (D.I. 1, Swift Affidavit ¶ 8; 18 Exs. 1, 5, 6.)[4] The substance field tested positive for cocaine. (D.I. 1, Swift Affidavit ¶ 9.)

On May 11, 1990[5] the same undercover officer went to the defendant residence. Simultaneously with an unknown white female named "Kooky," the officer indicated that he wanted cocaine and handed U.S. currency to Bly for the drugs. (D.I. 1, Swift Affidavit ¶ 9.) Again, Bly left the defendant residence to obtain the order and asked the officer to follow him to the back bedroom when he returned approximately 35 minutes later. (D.I. 1, Swift Affidavit ¶¶ 9, 10.) Bly poured a white powder substance from a clear plastic bag into an unfolded piece of paper and handed it to Kooky. (D.I. 1, Swift Affidavit ¶ 10.) Bly then repeated the procedure and handed the paper with the white powder substance to the undercover officer. (D.I. 1, Swift Affidavit ¶ 10.) The substance field tested positive for cocaine. (D.I. 1, Swift Affidavit ¶ 10.)

On July 26, 1990, the claimant was arrested for the two sales of cocaine and indicted on two counts of unlawfully delivering a controlled substance, one count of unlawfully possessing a controlled substance, two counts of maintaining a vehicle for unlawfully keeping a controlled substance, and two counts of maintaining a dwelling for the unlawful distribution of a controlled substance. (D.I. 18 Exs. 4, 6; 19 Ex. B.) On October 16, 1990, the claimant plead guilty to one delivery count and one vehicle count. (D.I. 18 Ex. 3; 19 Ex. B.)[6]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary

---

ten years. (D.I. 18 Ex. 6.) Mr. Frey does not contend that the nickname was not used on or about May 10, 1990.

**4.** The claimant admits that the officer accompanied him to the back bedroom but does not "recall" why the drugs could not be delivered in the living room or the reason for entering the bedroom. Although the claimant asserts that he did not store drugs in the bedroom before the sale or allow drug use in the bedroom after the sale, he does not directly challenge that he repackaged and kept part of the cocaine obtained for the undercover officer. (D.I. 18 Exs. 5, 6; 19 T–27, T–32, T–33.)

**5.** The evidence in the record concerning this sale is inconsistent. The claimant's answer did not directly challenge any of the facts stated in the undercover officer's affidavit but he later stated that he does not "recall" the second sale. (D.I. 8 ¶ 6; 18 Ex. 5.) In fact, at his sworn deposition, the claimant stated that it was possible, but not probable, that he was under the influence of drugs on May 11, 1990, and that this may explain his lack of memory. (D.I. 19 Ex. A at T–56.) The order adjudging the claimant guilty of unlawfully maintaining a vehicle reflects illegal activity on May 11, 1990.

However, both the Government and the claimant appear to agree that the plea agreement only referred to the drug sale occurring on May 10, 1990 (D.I. 18 Exs. 2 ¶ 2, 4, 6 ¶¶ 1, 2; 19 Exs. A at T–56, B ¶ 4), and the claimant "absolutely den[ies] that [he has] been selling cocaine to anyone since the incident that led to [his] arrest and conviction for delivery of cocaine in May of 1990." (D.I. 19 Ex. B ¶¶ 6, 9.) If convicted only for the May 10th incident, the claimant's affidavit appears to be a direct denial of the May 11th sale. Given the vague nature of the claimant's denial, the underlying state order and the other evidence, this Court will discuss the May 11th sale for background only. As discussed *infra*, the single violation on May 10th will support probable cause so resolution of this factual issue is unnecessary.

**6.** Over the claimant's strenuous denial, the undercover officer also alleges that he was informed by another officer on December 22, 1991, that an individual named "Bly" had been selling cocaine to a confidential informant. (D.I. 18 Ex. 2 ¶¶ 3, 4, 5; 19 Ex. B ¶ 9.) The second officer, however, only stated that "Bly" resided at 200 Pennsylvania Avenue, not that the informant had been buying cocaine at the defendant residence. (D.I. 18 ¶ 7.) This Court believes that this information is irrelevant and it cannot be considered because it does not connect the defendant residence with any wrongdoing. Moreover, as discussed *infra*, the single violation on May 10th will support probable cause so this Court does not see a need to resolve this factual dispute.

judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." "A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Where the nonmoving party opposing summary judgment has the burden of proof at trial on the issue for which summary judgment is sought, he must then make a showing sufficient to establish the existence of an element essential to his case. The nonmoving party is entitled to have all factual issues, and any reasonable inferences therefrom, resolved in its favor. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 353 (D.Del. 1987). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

■ The appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[I]n other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence in support of the nonmoving party will not prevent the grant of a motion for summary

judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Id.* at 249, 106 S.Ct. at 2510.

## III. DISCUSSION

■ "The only requirement for a seizure in a forfeiture action is probable cause." *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 158 (3d Cir.) (citing *United States v. Troiano*, 365 F.2d 416 (3d Cir.1966)), *cert. denied sub nom Whitby v. United States*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981) [hereinafter *One 1977 Lincoln*]. The Government bears the initial burden of showing probable cause, defined as a reasonable ground for belief in guilt. *6109 Grubb Road I*, 886 F.2d at 621; *One 1977 Lincoln*, 643 F.2d at 156. Once the Government has shown probable cause, the burden of proof shifts to the claimant to show, by preponderance of the evidence, that the property was not used in violation of the statute and, thus, it is not subject to forfeiture. *United States v. Premises Known as 2639 Meetinghouse Road*, 633 F.Supp. 979 (E.D.Pa.1986); 21 U.S.C. § 881(d) (incorporating procedure in 19 U.S.C. § 1615 (1980 & Supp.1991).

■ The Government contends that the undercover officer's sworn affidavit and the state narcotics conviction provide a reasonable ground for belief in guilt. Therefore, the Government contends that it has established probable cause to support the forfeiture. The claimant attacks the government's evidence of probable cause, asserting that there is an insufficient nexus between the defendant property and criminal activity because the residence was not indispensable or substantially related to the sale of cocaine at issue. (D.I. 19 at 7–8.) Without probable cause, the claimant argues that the Government is not justified in the proposed forfeiture. (D.I. 8 ¶ 6, 7.)

■ This Court agrees with the Government that probable cause supports forfeiture of the defendant property and rules that the testimony by the undercover officer, coupled with the deposition and ad-

mission evidence, provides conclusive evidence as to where the act in question occurred.[7] Therefore, for the reasons set forth below, this Court concludes that the Government has shown probable cause to support forfeiture as a matter of law.

A. *The Government Successfully Shows Probable Cause*

██ The text of the statute, as enacted by Congress, generally controls the Court's analysis. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (where the terms of the statute are unambiguous, judicial inquiry is complete); *United States v. Parcel of Real Property Known as 6109 Grubb Road,* 890 F.2d 659, 660–61 (3d Cir.1989) (unambiguous language presumed to express legislative purpose and resort to legislative history not necessary) [hereinafter *6109 Grubb Road II*]. The literal construction of a statute will be conclusive, absent clearly expressed legislative intention to the contrary or an absurd result. *Bread Political Action Committee v. Federal Election Comm'n.,* 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982); *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); Singer, 2A SUTH-ERLAND STATUTORY CONSTRUCTION §§ 45.01; 45.12 (5th ed.1991). The statute in the present case, in clear and unambiguous language, states that property used, in any manner, to commit or facilitate a drug offense is subject to forfeiture. The language does not require multiple violations of the law, continuing criminal behavior, conviction of the offender, or that the forfeiture be in proportion to the criminal activity. The statute does not give this Court equitable, discretionary powers.

The statute only requires probable cause and the Third Circuit permits forfeiture on probable cause alone. *One 1977 Lincoln,* 643 F.2d at 157–58 (forfeiture is appropriate whenever the property makes trafficking easier); *6109 Grubb Road I,* 886 F.2d at 623 (forfeiture is appropriate when probable cause is shown that the property was used in violation of the laws).

"The determination of probable cause in a forfeiture proceeding simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that" the property was used to further the trafficking [8] of illegal narcotics.

However, the state court did not render a final judgment on the issue of where the distribution of cocaine took place, the conviction does not tie the illegal activity to the defendant residence, and the record does not reflect that drugs, drug paraphernalia, tainted money, or loaded weapons were found on the defendant premises. This Court finds that the location of the drug sale was not a critical and necessary part of the judgment and that the issue was not necessarily decided by the state court. Furthermore, the Government offers no precedent to show that a grand jury finding of probable cause can constitute a "final judgment on the merits by a court of competent jurisdiction" for collateral estoppel purposes.

---

7. Although the Government contends that it is entitled to summary judgment solely on the grounds of collateral estoppel, this Court concludes that it is unnecessary to decide the motion on this ground. Collateral estoppel precludes relitigation of an issue resolved in an earlier suit. *Neoplan U.S.A. Corp. v. Taylor,* 604 F.Supp. 1540, 1543 (D.Del.1985) (quoting *Migra v. Warren City School District,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). Under Delaware law, "a final judgment upon the merits rendered by a court of competent jurisdiction [can] be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party or his privies." *Id.* (quoting *Epstein v. Chatham Park, Inc.,* 153 A.2d 180, 184 (Del.Super.1959)). Here, a Delaware court of competent jurisdiction rendered a final judgment on the merits. The court found beyond a reasonable doubt, based upon the claimant's admission of guilt and the plea agreement, that the claimant delivered a controlled narcotic on May 10, 1990 (# N90–07–1392), and maintained a vehicle for keeping controlled substances on May 11, 1990 (# N90–07–1396). (D.I. 18 Ex. 3.) Therefore, the doctrine of collateral estoppel bars the claimant from disputing unlawful activity.

8. Trafficking is defined as "[t]rading or dealing in certain goods and commonly used in connection with illegal narcotic sales." BLACK'S LAW DICTIONARY 777 (5th ed. 1983). The claimant notes that he did not receive a profit from the sale but obtaining a profit is not included in the definition. *See United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989) (forfeiture of house and curtilage permitted where claimant-owner was merely an intermediary who received little or no money).

*6109 Grubb Road I,* 886 F.2d at 621 (quoting *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983)).

■ To establish probable cause, the Government can use hearsay testimony, activity resulting in a state narcotics conviction, and common sense. *6109 Grubb I,* 886 F.2d at 621; *One 1977 Lincoln,* 643 F.2d at 157 (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)); *United States v. All Right, Title & Interest,* 901 F.2d 288, 292 (2d Cir.1990). The Government's supporting evidence "need not meet the standard of proof known as preponderance of the evidence." *All Right, Title & Interest,* 901 F.2d at 291 (quoting *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 n. 7 (2d Cir.1986)). "Rather, it must establish 'reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture.' " *Id.* (quoting *One Parcel of Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 101 (2d Cir.1990)).

While this Court agrees that the guilty plea alone does not sufficiently establish probable cause that the defendant residence was used to traffick cocaine, *see supra,* it establishes unlawful activity on May 10th and 11th of 1990. In addition, the Government offers a sworn affidavit under Rule 56(e), uncontested by the claimant, that the New Castle Police Department received information arousing suspicions of unlawful conduct on the defendant premises and prompting an investigation. (D.I. 18 Ex. 1.)[9] The Government offers a sworn affidavit under Rule 56(e), again uncontested by the claimant, that on May 10th the officer requested a controlled substance, waited in the defendant property until the controlled substance was obtained, and exchanged United States currency for the controlled substance on the defendant property. The Government offers a sworn affidavit under Rule 56(e), and the claimant admits, that on May 10th the delivery of the unlawful controlled substance occurred in a back bedroom of the defendant residence and that the claimant only delivered part of the controlled substance previously obtained.

This Court finds that, as a matter of law, the sentencing order combined with the undercover officer's affidavit creates probable cause that the defendant residence was used to commit a drug offense on May 10th. The government's evidence is adequate and sufficiently reliable to reasonably believe that the property was used to further the trafficking of illegal narcotics. Because the unambiguous language of the statute permits forfeiture based upon a single violation of law, this Court holds that the Government has proven probable cause for forfeiture under the statute and that there is no genuine issue of material fact for the jury.[10]

9. Normally, individuals convicted of the crime for which they were arrested cannot subsequently challenge the probable cause supporting the arrest in a civil action. *See Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *Snead ex. rel. v. Kirkland,* 462 F.Supp. 914, 922 (E.D.Pa.1978).

10. The claimant argues that forfeiture would serve no useful purpose. (D.I. 19 at 7.) He contends that he is a mere addict, not a dealer, and that he has repeatedly tried to conquer his addiction through various detoxification programs. (D.I. 19 at 2, T–13, T–14.) He asserts that he has depleted his savings, become financially dependent upon his family, and lost his jeep due to his addiction. He maintains that he has a girlfriend and a minor child to support and that forfeiture would throw them all into the streets. (D.I. 19.) If true, this Court agrees that the forfeiture laws impose a harsh remedy in this case. However, Congress intended to impose a harsh punishment for the distribution of illegal drugs. *United States v. Premises & Real Property at 4492 South Livonia Road,* 889 F.2d 1258 (2d Cir.1989). This Court is powerless to come to a contrary conclusion without improperly legislating from the bench. *Gregg v. Georgia,* 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) (courts are not designed to be a good reflex of a democratic society); *Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965) (courts are not super-legislatures); *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) (function of the legislature, not the courts, to balance advantages and disadvantages); 2A D. Sands, SUTHERLAND STATUTORY CONSTRUCTION at § 45.01.

**B.** *Third Circuit Does Not Impose "Substantial Connection" Requirement*

■■■ The claimant cites *United States v. All Those Certain Lots in Virginia Beach,* 657 F.Supp. 1062 (E.D.Va.1987) to persuade this Court that a "substantial connection" between the defendant property and the criminal activity is required.[11] This Court is not persuaded for three reasons. First, the Fourth Circuit has recognized a split of authority concerning the necessity of a "substantial connection" and has explicitly stated that the Third Circuit has adopted a different, more liberal standard. *United States v. Santoro,* 866 F.2d 1538, 1541 (4th Cir.1989).

Second, not only is this Court not bound by the Fourth Circuit's adoption of the "substantial connection" standard, the analysis adopting such a standard is flawed and unpersuasive. The decision in *Certain Lots in Virginia Beach* rests upon Fourth Circuit precedent involving § 881(a)(4) and the "innocent owner" defense, *see United States v. 1966 Beechcraft Aircraft Model King Air A90 etc.,* 777 F.2d 947 (4th Cir. 1985), neither of which are involved in the present case. Under Third Circuit law, which binds this Court, a "substantial connection" may be relevant to the question of whether an "innocent owner" knew or should have reasonably known about the illegal activity but it is not relevant to probable cause in the first instance.[12]

Even if this Court were to conclude that it is proper to examine the legislative history when the statutory language is clear and unambiguous, *see supra,* the legislative history relied upon in *Certain Lots in Virginia Beach* does not impose a "substantial connection" requirement. The legislative history in *Certain Lots in Virginia Beach* reads as follows:

> Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marihuana or uses his house as a manufacturing laboratory for amphetamines, there is no provision to subject his real property to civil forfeiture, even though its use was indispensable to the commission of a major drug offense and the prospect of the forfeiture of the property would have been a powerful deterrent.

*United States v. Certain Lots in Virginia Beach,* 657 F.Supp. at 1065. This Court concludes that this legislative history merely indicates the egregious nature of the loophole in the civil forfeiture laws. It does not impose an "indispensable requirement" just because the term "indispensable" is used, a fact recognized by the Fourth Circuit. *United States v. Certain Lots in Virginia Beach,* 657 F.Supp. at 1065. Furthermore, this Court's interpretation does not lead to an absurd result because Congress intended the forfeiture remedy to be harsh. *See United States v. One 107.9 Acre Parcel of Land,* 898 F.2d 396, 400 (3d Cir.1990) (forfeiture of an entire tract is permitted even though the wrongdoing occurs only on a part). In fact, this Court believes that the imposition

---

**11.** In *Certain Lots in Virginia Beach,* the Government's probable cause consisted of a single transaction where the claimant picked up the cocaine on his way home from work, a few hours before the sale, and the claimant showed and packaged the drugs at his house. Unlike the present case, the actual delivery did not occur in the defendant residence.

**12.** The Third Circuit apparently found the statutory language creating the "innocent owner" exception to be ambiguous and looked to Congressional intent for clarification in *6109 Grubb Road I,* 886 F.2d at 623–24. The legislative history noted that the drafted provision known as § 881(a)(7) "would also include an 'innocent owner' exception *like that included* in those provisions permitting the civil forfeiture of certain vehicles and moneys or securities [§ 881(a)(6) ]." *Id.* at 625 (quoting 1984 U.S.C.C.A.N. at 3182, 3398) (emphasis added). The legislative history for § 881(a)(6), incorporated into the innocent owner exception, stated that "[d]ue to the penal nature of forfeiture states, it is the intent of these provisions that property would be forfeited only if there is as a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent." *Id.* (quoting Joint Explanatory Statement of Titles II and III, 124 Cong.Rec. S17647 (October 7, 1978) *reprinted at* 1978 U.S.C.C.A.N. 9496, 9518, 9522).

of a "substantial connection" requirement is inconsistent with Congressional intent.

██ Three, even under Fourth Circuit law, the actual sale and delivery of a controlled substance constitutes a "substantial connection." *6109 Grubb Road II*, 890 F.2d at 663 n. 2 (quoting *United States v. Santoro*, 866 F.2d at 1542). Imposition of a "substantial connection" requirement creates a distinction without a difference under the facts and circumstances of the present case. Even if a substantial connection were required, it would be satisfied by the government's evidence that drug-related activity occurred on the premises on May 10th.

## IV. CONCLUSION

██ Under § 881, a claimant may escape forfeiture by rebutting the government's evidence of probable cause or proving the innocent owner defense written into the statute. *6109 Grubb Road I*, 886 F.2d at 623 (citing *United States v. $55,518.05 In U.S. Currency*, 728 F.2d 192 (3d Cir. 1984)); *All Right, Title & Interest*, 901 F.2d at 291 (citing *United States v. The Premises & Real Property at 4492 South Livonia Road*, 889 F.2d 1258 (2d Cir.1989)). Summary judgment is appropriate, based solely upon the government's showing of probable cause, if the claimant cannot raise either defense. *All Right, Title & Interest*, 901 F.2d at 291.

As noted earlier, the claimant is collaterally estopped from asserting the innocent owner defense due to his state narcotics conviction. As for probable cause, the Government has offered overwhelming evidence to support forfeiture but the claimant has not even offered a scintilla of evidence that a drug offense did not occur on the defendant residence on May 10th. Therefore, no genuine issue of material fact exists for a jury to resolve. Summary judgment, as a matter of law, is appropriate in favor of the Government and against the claimant. An order in accordance with this Memorandum Opinion will be entered.